OZARK AIR LINES, INC., Plaintiff,

v.

DELTA AIR LINES, INC., and United States of America, Defendants.

DELTA AIR LINES, INC., Counterclaimant and Cross-claimant,

v.

OZARK AIR LINES, INC., Counter-Defendant,

and

United States of America, Cross-Defendant.

No. 69 C 2042.

United States District Court, N. D. Illinois, E. D.

May 10, 1974.

# 70

Peterson, Lowry, Rall, Barber & Ross, Irving G. Swenson, Chicago, Ill., for plaintiff Ozark Air Lines, Inc.

Wildman, Harrold, Allen & Dixon, James P. Door, Chicago, Ill., Delta Air Lines, Inc., Hartsfield Atlanta International Airport, Frank F. Rox, Gerald M. Mayo, Atlanta, Ga., for defendants Delta Air Lines, Inc.

Mark A. Dumbroff, Aviation Unit, Tort Section Civ. Div., Dept. of Justice, Washington, D. C., for the United States.

## MEMORANDUM AND ORDER

ROBSON, Chief Judge.

Cross-claimant Delta Air Lines (Delta) has moved to amend its pleadings. Cross-defendant United States of America has moved for an order denying leave to amend and, alternatively, to dismiss Delta's cross-claim against the United States. For the reasons stated below, this court is of the opinion that Delta's motion should be granted and that the motions of the United States should be denied.

On May 8, 1969, plaintiff Ozark Air Lines' (Ozark) FH–227 aircraft and defendant Delta's DC–8 aircraft collided on a runway at O'Hare International Airport, Chicago, Illinois.[1] On October 1, 1969, Delta as the owner of the DC–8 aircraft filed an administrative claim with the Federal Aviation Agency pursuant to 28 U.S.C. § 2672. Attached to the claim and subsequently filed was a suit against the United States for damages incurred by Delta as a result of the accident. Suit was filed by Delta as owner of the DC–8 aircraft pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) et seq. At all relevant times in these proceedings, Delta represented itself to be the owner of the DC–8 aircraft.

On March 21, 1974, five days before trial, counsel for Delta first advised the government that Delta was *not* the owner of the DC–8 on the day of the accident but rather leased the aircraft from the McDonnell Douglas Corporation under a lease-purchase agreement. It was not until the morning of the trial, March 26, 1974, that Delta provided the government with a copy of the lease. That same morning, Delta's counsel revealed for the first time that Delta had substituted for the damaged aircraft another DC–8 that was not being utilized in revenue operations. The government contends that this latter factual change adversely affects Delta's claim for damages.

With the court's permission, Delta moved to amend all relevant documents to reflect the altered facts. It is this motion that the United States now opposes.

The United States argues that Delta's motion to amend should be denied on the grounds that: 1) the motion was not timely filed; 2) the granting of the motion would work to the prejudice of the United States; and 3) the motion is in contravention of the administrative filing provisions of the Federal Tort Claims Act. As grounds for dismissal, the United States contends that the revised fact situation divests this court of jurisdiction under the provisions of the Federal Tort Claims Act and the regula-

[1]. Ozark orginally brought this diversity suit against Delta and against the United States, as the traffic controller, and Delta filed a counterclaim against plaintiff Ozark and a cross-claim against the United States. Ozark has not objected to Delta's motion to amend.

tions promulgated thereunder. 28 C.F.R. 14.

## I.

 As a prerequisite to seeking judicial relief under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) et seq., a potential plaintiff initially must file his claim before the appropriate administrative agency. After rejection of the claim or the passage of six months without final disposition, the claimant is free to institute suit against the United States in district court. 28 U.S.C. § 2675(a). This requirement is jurisdictional and cannot be waived. The mere filing of a suit does not satisfy the statutory requirement of first presenting a claim to the appropriate administrative agency. Best Bearings Co. v. United States, 463 F.2d 1177 (7th Cir. 1972); Driggers v. United States, 309 F.Supp. 1377 (D.C.S.C.1970).

 The applicable regulations governing the filing of administrative claims are found in 28 C.F.R. § 14.2(a) and § 14.3(a).

§ 14.2(a) provides, in relevant part: (a). . . a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property . . . alleged to have occurred by reason of the incident.

§ 14.3(a) provides, in relevant part: (a) A claim for injury to or loss of property may be presented by the owner of the property, his duly authorized agent or legal representative.

The government contends that 28 C.F.R. § 14.3(a) precludes the filing of an administrative claim by anyone other than the legal owner of the damaged property, his duly authorized agent or legal representative. The government argues that since Delta was the leasee and not the "owner" of the DC–8 aircraft, the claim submitted by it was fatally defective and insufficient to support the jurisdictional requirements set out in 28 U.S.C. § 2675(a). Thus, the government reasons this court is divested of jurisdiction and must dismiss the cross-claim against the government.

Administrative procedural rules like the Federal Rules of Civil Procedure must be interpreted liberally to promote not only the avowed objectives of those rules but also substantive justice. See Sky Harbor Air Service, Inc. v. United States, 348 F.Supp. 594 (D.C.D.Neb. 1972); Rule 1, F.R.Civ.P. It is the opinion of this court that the hypertechnical construction of 28 C.F.R. § 14.-3(a) postulated by the government is not in accord with this general principle.

The administrative filing provisions embodied in 28 U.S.C. § 2675(a) were intended to ease court congestion and avoid unnecessary litigation, while making it possible for the government to expedite the fair settlement of tort claims asserted against the United States. Specifically, the mandatory filing of claims permitted the affected agency to fully investigate the accident and to accept or reject an offer of settlement prior to trial. See 1966 U.S.Code Cong. and Admin.News, p. 2515.

It is undisputed that Delta did file a timely written administrative claim with the Federal Aviation Agency setting forth the name of the claimant, the details of the incident and demanding payment of a sum certain as compensation. See, 28 C.F.R. § 14.2(a). Thus, the government was given ample opportunity for both investigation and settlement prior to trial. Surely, the government cannot now contend that the Federal Aviation Agency's rejection of Delta's claim would have been altered by knowledge that Delta owned a leasehold interest rather than title to the aircraft involved in the accident.

Moreover, Standard Form 95 (*See* 28 C.F.R. § 14.2(a)) explicitly provides for the filing of an administrative claim by a claimant other than the owner of the damaged property. In the "Property Damage" section of that form, a space is provided for "Name of Owner, if Other than Claimant." In light of this form, the government cannot logically contend that 28 C.F.R. § 14.3(a) was intended to preclude the filing of property damage claims by anyone other than the legal owner of the property. The language of 28 C.F.R. § 14.3(a) is permissive ("may") and not exclusive, and thus, on its face does not prohibit filings by non-owner claimants, like Delta in this case.

Finally, it is clear that for all practical and equitable purposes Delta did "own" the aircraft at the time of the accident. As the lease shows, Delta had full responsibility for the repairs necessitated by this accident and clearly was the real party in interest for damages sought for loss of use, cost of repair and ferrying fees. The government's interpretation of "owner" to mean legal title holder is constrained and contrary to the logical import of that term in this context.

Accordingly, the court hereby finds that Delta has satisfied the requirements of 28 U.S.C. § 2675 of first presenting their claim to the Federal Aviation Agency.

## II.

■ Rule 15(a) Fed.R.Civ.P. requires that leave to amend the pleadings be granted freely "when justice so requires." At the same time, it is clear that such leave should be denied where the moving party has been guilty of bad faith, is acting for the purpose of delay, or where the amendment would cause substantial prejudice to a party to the action. *See* Atlantic Utilities Co. v. SMW Devel. Corp., 392 F.2d 380 (2nd

Cir. 1968); Strauss v. Douglas Aircraft Co., 404 F.2d 1152 (2nd Cir. 1968); 3 Moore, Federal Practice ¶ 15.08[2].

■ In an affidavit submitted in support of Delta's motion, Gerald M. Mayo, senior attorney for Delta, stated that the misrepresentation complained of was due solely to an inadvertent administrative error. At the time of the collision and the institution of this litigation, Delta had a fleet numbering approximately 135 aircraft, of which 132 aircraft were *owned* by Delta. The Delta aircraft involved in this litigation was operated by Delta on a short-term lease pursuant to a purchase agreement. The subject aircraft was subsequently purchased by Delta—approximately eight months after the accident, with the rental payment being applied against the purchase price. The misrepresentation at issue remained undiscovered due to the fact that Delta's responsibility for, and its operation and maintenance of, this aircraft under its lease was essentially identical with that of Delta's other owned aircraft. Assuming, as the court must for the purposes of this motion, that Mr. Mayo's statement is correct, it is clear that Delta was not guilty of either bad faith or delay in this matter.

■■ Nor can it be said that the government will be prejudiced if leave to amend is granted. The government has repeatedly asserted that the four and one-half year delay between the filing of the complaint and the revelation of the leasing agreement has demonstrated a lack of due diligence on Delta's part and has adversely affected the government's case. However, it is well established, that delay itself, excusable or inexcusable, is not sufficient to warrant denial of a motion to amend pleadings. It must be shown that to allow the amendment would result in substantial prejudice to the opposite party. FLI–FAB, Inc. v. United States, 16 F.R.D. 553 (D.

C.R.I.1954); Middle Atlantic Utilities Co. v. SMW Develop. Corp., 392 F.2d 380 (2nd Cir. 1968).

In the instant case, the government was fully apprised of the date of the incident, the acts alleged to have caused the injury, the identity of the claimant and the sum demanded as damages. Any possible prejudice suffered by the government can be fully cured by permitting it a reasonable discovery period to fully explore both the cause of the delay and any effect the altered facts may have upon the substantive issues to be tried.[2] A motion for additional discovery by the government to this effect will be granted.

In sum, to deprive Delta of the right to an adjudication on the merits merely for mislabeling its interest in the damaged aircraft would, in the opinion of this court, be contrary to the best interest of justice.

It is therefore ordered:

1. Delta Air Lines', Inc. motions for leave to amend its a) answer to second amended complaint of Ozark Air Lines, Inc., b) counterclaim against Ozark Air Lines, Inc., c) cross-claim against United States, and d) answer to cross-claim of United States, shall be, and the same are hereby, granted.

2. United States' motion to deny Delta Air Lines', Inc. motion for leave to amend a) Delta Air Lines', Inc. cross-claim against United States and b) Delta Air Lines', Inc. answer to cross-claim of United States shall be, and the same is hereby, denied.

3. United States' motion to dismiss Delta Air Lines', Inc. cross-claim against the United States shall be, and the same is hereby, denied.

---

2. Further, Delta has agreed to reimburse both Ozark and the government for any out-of-pocket expenses incurred by the delay.