570 F.2d 221
 48 A.L.R.Fed. 845
 Agnes LUNSFORD, as Special Administratrix of the Estates of
Theophil Gall and Alice H. Gall, Deceased, Agnes Lunsford
and Carol O'Brien as the sole heirs at law and next of kin
of Theophil Gall, Alice H. Gall and of Norvel Gall,
Deceased, E. F. Lodmell, Jr., as Executor of the Estates of
E. F. Lodmell and Anna R. Lodmell, Deceased, E. F. Lodmell,
Jr., and Leeann Emme as the sole heirs at law and next of
kin of E. F. Lodmell and Anna R. Lodmell, Deceased, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 76-1984.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 19, 1977.
Decided Dec. 31, 1977.
 
 Horace R. Jackson, Rapid City, S.D., for appellants; Sam W. Masten and Jeff Masten, Canton, S.D., on brief.
 Thomas J. Whalen, New York City, for appellee; Lawrence Mentz and Moffett Burgess Roller, Condon & Forsyth, New York City, Irving Jaffe, Acting Asst. Atty. Gen., Washington, D.C., William F. Clayton, U.S. Atty., Sioux Falls, S.D., Robert E. Kopp, Edwin E. Huddleson, III and J. Charles Kruse, Attys., Dept. of Justice, Washington, D.C., on brief.
 Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and WEBSTER, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 This action was brought as a class action against the United States under the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 2671-2680. The named plaintiffs either themselves lost property or are heirs at law, next of kin or court-appointed representatives of persons who died and lost property in the flood which occurred in Rapid City, South Dakota, on June 9, 1972. They sought to bring this action on behalf of all persons who lost their lives and property as a result of the flood which caused substantial property damage and resulted in two hundred and eighty-three deaths.
 
 
 2
 The plaintiffs alleged that the flood was directly and proximately caused by excessive rain produced by cloud seeding at a time when threatening weather conditions were present.[1] The experimental cloud seeding program was conducted by the South Dakota School of Mines and Technology under contract with the Bureau of Reclamation of the United States Department of the Interior. The plaintiffs further alleged that the experimental cloud seeding program was inherently dangerous, thus giving rise to a nondelegable duty on the part of the United States to supervise the conduct of the program. This duty was allegedly breached when the cloud seeding program was conducted during adverse weather conditions.
 
 
 3
 On June 7, 1974, all but one of the named plaintiffs filed administrative claims with the Bureau of Reclamation as administrators, heirs at law and executors of the estates of persons who died and lost property in the flood.[2] Each claim stated that the property damage and deaths were the result of a negligent cloud seeding operation of the Bureau of Reclamation. Each claim also stated that it was
 
 
 4
 further filed as a class claim and action on behalf of (a) all persons sustaining damage by reason of the death of a relative caused proximately by the persons and events stated herein and (b) all persons sustaining damage to property caused proximately by the persons and events stated herein.
 
 
 5
 The claims were denied by the Department of Interior in a letter dated December 4, 1974.
 
 
 6
 This action was filed in the United States District Court for the District of South Dakota on June 2, 1975, by the individuals filing administrative claims and by Leeann Emme, who had not filed an administrative claim. The damages alleged by the named plaintiffs in the complaint differed from the amounts sought in the administrative claims.[3] The individual plaintiffs sued on their own behalf and on behalf of the members of the class of persons who lost their lives and property as a result of the flood. Neither the administrative claims nor the complaint stated the total amount of damages incurred by the entire class.
 
 
 7
 The United States moved to dismiss the class action for lack of subject matter jurisdiction under the FTCA. The plaintiffs moved to strike certain defenses raised by the United States including the defense that the United States is not liable for flood damages under § 3 of the Flood Control Act of 1928, 33 U.S.C. § 702c.
 
 
 8
 The District Court dismissed the action as a class action and denied the plaintiffs' motion to strike the government's defense based upon § 3 of the Flood Control Act, 33 U.S.C. § 702c. Lunsford v. United States, 418 F.Supp. 1045 (D.S.D.1976). It certified its ruling dismissing the class action and denying the plaintiffs' motion to strike the government's defense under § 702c as involving controlling issues of law pursuant to 28 U.S.C. § 1292(b). Id. at 1056. On November 11, 1976, this Court granted the plaintiffs permission to file an interlocutory appeal as to both issues. However, we reserved final judgment as to whether the question of governmental immunity under § 702c is presently appropriate for interlocutory review.
 
 MAINTENANCE AS A CLASS ACTION
 
 9
 The District Court held the administrative filing requirement of the FTCA to be jurisdictional in nature. 28 U.S.C. § 2675(a). It found that the named plaintiffs had no authority to act as agents and present claims on behalf of the unnamed class members. It also found that no sum certain was stated with respect to the class claim. It held that the administrative exhaustion requirement of the FTCA had not been met with respect to the claims of the unnamed class members and dismissed the class action for lack of subject matter jurisdiction. We agree and affirm the District Court's dismissal of the class action. We emphasize, however, that the named plaintiffs who satisfied the administrative exhaustion requirement may still proceed with their cause of action.[4]
 
 
 10
 The United States enjoys sovereign immunity except to the extent it has consented to be sued. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Iowa Public Service Co. v. Iowa State Commerce Com'n, 407 F.2d 916, 920 (8th Cir.), cert. denied, 396 U.S. 826, 90 S.Ct. 71, 24 L.Ed.2d 77 (1969). As this Court has stated
 
 
 11
 (a) corollary to the immunity doctrine is the rule that the United States may define the conditions under which actions are permitted against it.
 
 
 12
 Peterson v. United States, 428 F.2d 368, 369 (8th Cir. 1970).
 
 
 13
 The condition at issue here is the FTCA requirement found at 28 U.S.C. § 2675(a) that a claim be properly presented to the appropriate federal agency and denied before an action can be brought in federal district court.[5] The Eighth Circuit has held that the administrative exhaustion requirement of 28 U.S.C. § 2675(a) is jurisdictional, Melo v. United States, 505 F.2d 1026, 1028 (8th Cir. 1974); Meeker v. United States, 435 F.2d 1219, 1220 (8th Cir. 1970), and thus, it cannot be waived. The other circuits considering the question have also held that administrative exhaustion is an absolute prerequisite to the maintenance of an action under the FTCA. Blain v. United States, 552 F.2d 289, 291 (9th Cir. 1977); Molinar v. United States, 515 F.2d 246, 249 (5th Cir. 1975); Best Bearings Co. v. United States, 463 F.2d 1177, 1179 (7th Cir. 1972); Bialowas v. United States, 443 F.2d 1047, 1049 (3rd Cir. 1971).
 
 
 14
 The administrative exhaustion requirement, 28 U.S.C. § 2675(a), was among the amendments to the FTCA adopted in 1966. Prior to the adoption of these amendments, the FTCA only provided for administrative settlement where the claim was for $2,500 or less. Federal Tort Claims Act, ch. 753, § 403, 60 Stat. 843 (1946). Moreover, an administrative claim could be withdrawn within fifteen days of the date it was filed and suit could be brought. Federal Tort Claims Act, ch. 753, § 410(b), 60 Stat. 844 (1946). The Senate and the House reports indicate, Congressional intent in enacting the administrative exhaustion requirement was
 
 
 15
 to improve and expedite disposition of monetary claims against the Government by establishing a system for prelitigation settlement, to enable consideration of claims by the agency having the best information concerning the incident, and to ease court congestion and avoid unnecessary litigation.
 
 
 16
 Meeker v. United States, supra at 1222. S.Rep.No.1327, 89th Cong., 2d Sess. 3, reprinted in (1966) U.S.Code Cong. & Admin.News p. 2515; H.R.Rep.No.1532, 89th Cong., 2d Sess. 4 (1966).
 
 
 17
 To achieve this purpose, certain procedural administrative requirements were established. See 28 C.F.R. § 14.1 et seq.[6]
 
 
 18
 The plaintiffs argue that the administrative claims filed here clearly indicated that they were also filed on behalf of all unnamed members of the class and, thus, were in substantial compliance with the jurisdictional requirement of administrative exhaustion. We cannot agree.
 
 
 19
 Neither the FTCA nor the regulations promulgated thereunder make provision for the filing of administrative claims against the United States on behalf of a class of similarly situated individuals. Caidin v. United States,564 F.2d 284 (9th Cir., 1977); Commonwealth of Pa. v. National Ass'n of Flood Ins., 520 F.2d 11, 23 (3rd Cir. 1975). However, the procedure for administrative exhaustion established under the FTCA clearly presupposes the existence of an identifiable claimant or claimants with whom the government can negotiate a settlement on the basis of the sum certain stated in the administrative claim. The administrative claims filed here did not adequately present the claims of unnamed class members. Not all of the claimants were identifiable; none of the named plaintiffs asserted authority to present claims on behalf of the unnamed class members; and no sum certain was stated with respect to the class claim so that the government could evaluate the claim for possible settlement.
 
 The Third Circuit has held that the FTCA
 
 20
 makes no distinction between the individual claimant and the claimant who may, by reason of the facts giving rise to his claim, be a member of a class. In both instances, the purpose and the language of the statute require claimants to have separately and individually satisfied all jurisdictional requirements (.)
 
 Id. (footnote omitted).[7]
 
 21
 It went on to hold that Pennsylvania could not bring an action on behalf of the class of individuals who sustained uninsured flood damage because the individual claimants failed to satisfy the administrative requirements of the FTCA. Id. at 24. A similar result was reached in Harrigan v. United States, 63 F.R.D. 402, 409 (E.D.Pa.1974). There the plaintiff sought to represent a class of paraplegics who had undergone urological surgery in Veterans Administration hospitals. However, only seven members of the class had filed administrative claims and the class action was dismissed because of the failure of each member of the class to file an administrative claim as required by the FTCA.
 
 
 22
 The Ninth Circuit recently discussed the administrative claim requirement of the FTCA as applied to a class action in Caidin v. United States, supra. In Caidin, the plaintiff sought damages from the United States as a result of the failure of a national bank. On his own behalf and upon behalf of those similarly situated, he filed an administrative claim and later brought an action. The Ninth Circuit opinion focused upon the regulations governing who may file a claim. The regulations provide that a claim may be filed on another's behalf,[8] but only if evidence is presented as to the authority of each individual who has not filed on his own behalf. 28 C.F.R. § 14.3. The Ninth Circuit held that:
 
 
 23
 Since the major reason for the administrative claim requirement is to facilitate settlement of cases, we feel it necessary to require that the existence of such authority be asserted contemporaneously with the filing of the claim by one who files on behalf of a claimant. In the absence of an assertion of such authority the ability of the United States to negotiate a settlement is impeded.
 
 
 24
 Caidin v. United States, supra at 286 (footnote omitted).
 
 
 25
 In the instant case, the named plaintiffs did not allege in either the administrative claims or the complaint that they are the authorized agents of the unnamed members of the class. Accordingly, we find that the administrative claims inadequately presented the claims of unnamed class members because they failed to demonstrate the existence of the necessary agency relationship.
 
 
 26
 The administrative claims were also inadequate to present the claims of unnamed class members since they failed to state a sum certain as to damages incurred by the entire class. The sum certain requirement of 28 C.F.R. § 14.2 is a reasonable one in light of the FTCA purpose of expediting prelitigation settlement. Caton v. United States, 495 F.2d 635, 637 (9th Cir. 1974).[9] Numerous cases have been dismissed for failure of the individual claimant to state a sum certain in his administrative claim. See, e. g., Allen v. United States, 517 F.2d 1328 (6th Cir. 1975); Caton v. United States, supra; Melo v. United States, supra; Bialowas v. United States, supra.
 
 
 27
 The plaintiffs argue that technical noncompliance with the administrative regulations should not preclude recovery when the claim was sufficient to give the government notice of the claim. They point to a number of cases where certain minor technical failures to comply with the administrative procedures established by the regulations did not bar recovery.[10] In each of the cases, however, an identifiable claimant had filed a claim for a sum certain thus giving the government the opportunity to evaluate and settle the claim later sued upon.
 
 
 28
 Finally, the plaintiffs seek to analogize to cases which have permitted class actions to be filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., as long as at least one named plaintiff has complied with the procedural requirements of the Equal Employment Opportunity Commission. See Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). We follow the District Court in rejecting this analogy. Lunsford v. United States, supra at 1050. Unlike actions under Title VII, suits under the FTCA are not inherently class actions. Moreover, the clear purpose behind the administrative exhaustion requirement of the FTCA is to encourage prelitigation settlement and the various governmental agencies are given broad authority to settle the claims. On the other hand, the EEOC may only conciliate; it has no authority to settle claims filed with it.
 
 
 29
 In summary, a class action can be maintained under the FTCA if each of the claimants have individually satisfied all of the jurisdictional requirements. A class action can also be maintained if a class claim has been filed which names the individual claimants, asserts and establishes the authority of the named claimant (or claimants) to present claims on behalf of the unnamed class members, states the total amount of the claim for the entire class and otherwise satisfies the jurisdictional requirements. Neither alternative was satisfied here. Accordingly, we affirm the District Court's dismissal of the class action for lack of subject matter jurisdiction since the administrative exhaustion requirement of the FTCA was not met with respect to the claims of the unnamed class members.
 
 
 30
 GOVERNMENT'S DEFENSE OF IMMUNITY UNDER 33 U.S.C. § 702c
 
 
 31
 The United States pleaded immunity from liability for flood damages on the basis of § 3 of the Flood Control Act of 1928, 33 U.S.C. § 702c, as a defense. The plaintiffs contended that the immunity granted to the United States was limited to cases in which the negligence attributable to the United States was connected with a flood control project and moved to dismiss the government's defense.[11] The District Court believed that the plaintiffs' position had substantial merit, but felt bound by National Mfg. Co. v. United States, 210 F.2d 263 (8th Cir.), cert. denied, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (1954), which stated the immunity under § 702c in broad terms. Lunsford v. United States, supra at 1054. It, thus, denied the plaintiffs' motion to strike the government's defense based upon § 702c.
 
 
 32
 The immunity of the United States from flood damages is stated in very broad terms by § 702c.
 
 
 33
 No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place(.)
 
 
 34
 33 U.S.C. § 702c.
 
 
 35
 The provision was first enacted as part of the Flood Control Act of 1928 and has been subsequently reenacted as part of later flood control statutes. There is little or no discussion of the immunity provision in the legislative history. See Graci v. United States, 301 F.Supp. 947, 953 (E.D.La.1969), 456 F.2d 20, 23 (5th Cir. 1971). The provision was not introduced until shortly before the final version of the Flood Control Act was enacted. The only comment made with respect to the provision was made by a congressman on the House floor "to the effect that in engaging itself in flood control works, the government should not lay itself open to suits for flood damage. See 69 Cong.Rec. 7022." Id., 301 F.Supp. at 953 n. 8. The United States enjoyed sovereign immunity at the time the provision was first enacted so that it must be viewed as a statement of then existing law. See National Mfg. Co. v. United States, supra at 271. It is well-settled that the later passage of the FTCA in 1946 did not repeal by implication the immunity granted under § 702c. Id.; Clark v. United States, 218 F.2d 446, 452 (9th Cir. 1954).
 
 
 36
 The leading case on the construction of § 702c is National Mfg. Co. v. United States, supra. In that case, the Eighth Circuit noted that by enacting the immunity provision, Congress
 
 
 37
 safeguarded the United States against liability of any kind for damage from or by floods or flood waters in the broadest and most emphatic language. The cost of the flood control works itself would be very great and Congress plainly manifested its will that those costs should not have the flood damages that will inevitably recur added to them.
 
 
 38
 Id. at 270.
 
 
 39
 It is clear from the legislative history and the case law that the purpose of § 702c "was to place a limit on the amount of money that Congress would spend in connection with flood control programs." Graci v. United States, supra, 456 F.2d at 25.
 
 
 40
 Section 702c was given a very broad and literal interpretation in National Mfg. Co. v. United States, supra. In discussing the section, the Eighth Circuit stated:
 
 
 41
 The use of the word "from" in addition to "by" makes it clear that the bar against federal liability for damages is made to apply wherever floods or flood waters have been substantial and material factors in destroying or damaging property.
 
 
 42
 Id. at 271.
 
 
 43
 It is significant, however, that National Mfg. Co. v. United States, supra, and other cases upholding the immunity granted under § 702c, have all arisen out of negligence with respect to a flood control project. See, e. g., Florida East Coast Railway Company v. United States, 519 F.2d 1184 (5th Cir. 1975); McClaskey v. United States, 386 F.2d 807 (9th Cir. 1967); Parks v. United States, 370 F.2d 92 (2d Cir. 1966); Stover v. United States, 332 F.2d 204 (9th Cir.), cert. denied, 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964); Clark v. United States, supra; Ponderendolph v. Derry Township, 330 F.Supp. 1346 (W.D.Pa.1971); B Amusement Company v. United States, 180 F.Supp. 386, 148 Ct.Cl. 337 (1960); Villarreal v. United States, 177 F.Supp. 879 (S.D.Tex.1959); Peerless Serum Co. v. United States, 114 F.Supp. 662 (W.D.Mo.1953). The plaintiffs argue that these cases can be distinguished on their facts and that the broad and literal interpretation given to § 702c is dicta. Thus, they contend that the immunity granted by § 702c ought to be limited to negligence arising out of flood control projects.
 
 
 44
 This position is not without support. Both the Ninth and the Fifth Circuits[12] have limited § 702c immunity to instances when the damage resulted from negligence with respect to a flood control project. Graci v. United States, supra; Peterson v. United States, 367 F.2d 271 (9th Cir. 1966).[13] In Peterson v. United States, supra, the flood damage resulted from the dynamiting of an ice jam by engineers attached to the Ladd Air Force Base in Fairbanks, Alaska. The District Court dismissed the action, holding that § 702c provided a complete defense. The Ninth Circuit reversed. It found the National Mfg. Co. v. United States, supra, line of cases to be distinguishable on their facts because the negligence of the United States in dynamiting the ice jam was "wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization." Id. at 275.[14] In Graci v. United States, supra, the plaintiffs were permitted to bring an action for damages which resulted when a hurricane caused flooding along the Mississippi River-Gulf Outlet. The Outlet was constructed as a navigational project, not as a flood control project. Prior to its construction, no hurricane damages from flooding would have been possible. The Fifth Circuit refused to construe § 702c
 
 
 45
 to be a wholesale immunization of the Government from all liability for floodwater damage unconnected with flood control projects.
 
 
 46
 Id., 456 F.2d at 27.
 
 
 47
 The District Court felt there was substantial merit to this line of cases but it felt bound by National Mfg. Co. v. United States, supra. Lunsford v. United States, supra at 1054. It, thus, refused to strike § 702c as a defense because it found the defense to be sufficient as a matter of law. We agree that the defense should remain but we do so without reaching the question of the scope of immunity under § 702c on the merits.
 
 
 48
 Motions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted. 5 Wright and Miller, Federal Practice and Procedure: Civil § 1380 at 783 (1969). The District Court correctly stated the following standard by which to test the sufficiency of a defense.
 
 
 49
 A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear.
 
 
 50
 2A Moore's Federal Practice P 12.21 at 2437 (2d ed. 1975).
 
 
 51
 Under this standard, the defense should remain whether National Mfg. Co. or Peterson and Graci are followed. If National Mfg. Co. is followed, then the defense is sufficient as a matter of law. If Peterson and Graci are followed, then a factual determination of whether or not the damages resulted from negligence attributable to a flood control project is required to establish the defense.
 
 
 52
 We are reluctant to rule on the question of the scope of immunity under § 702c without the benefit of a full record. In our order of November 11, 1976, we reserved decision on whether the question of immunity under § 702c is presently appropriate for interlocutory review. We believe the question is not presently ripe for determination.
 
 
 53
 In State of Minnesota v. United States Steel Corporation, 438 F.2d 1380, 1384 (8th Cir. 1971), we held:
 
 
 54
 We have no doubt that determination of the substantive issues of the appeal at this time would be helpful to the district court and all of the parties. As the district court points out, an early determination of the legal question might have the salutary effect of hastening settlement in a case which otherwise promises to be long and expensive. Nevertheless, we feel compelled to rule in a limited manner at this time by reason of the incomplete interlocutory record available to us. Courts have traditionally been reluctant to grant interlocutory appeals not only because of the lack of finality of the order under review but also because the incomplete factual proof gives few guides for a proper decision. The integrity of the appellate process would be compromised if advisory opinions were rendered on hypotheses which evaporated in the light of full factual development. The legal questions should not be considered in the abstract. There must be precision in proof of fact worthy to serve as the premises essential to balance and weigh the legal issues involved. Upon full review of the record we are satisfied that precision is lacking here. Our analysis leads us to conclude that the issues presented on this appeal are too significant and far-reaching to be decided without the full evidentiary record. These considerations outweigh the desirability of having appellate pretrial advice to enhance settlement purposes. (footnote omitted)
 
 
 55
 Such reasoning is fully applicable here. The record is incomplete. No evidentiary hearing has been held. On hearing, it may develop that a flood control project materially contributed to this flood.[15] It may also develop that there is no substantial evidence that any government agency was guilty of any negligence which caused the flood. Thus, a possibility exists that the scope of immunity under § 702c does not need to be determined to decide this case.
 
 
 56
 If the District Court must reach the question of the scope of immunity under § 702c, it should do so on the basis of a complete record. It should do so with an open mind and need not necessarily feel bound by the decision in National Mfg. Co. v. United States, supra.
 
 
 57
 Accordingly, the order of the District Court dismissing the class action and denying the plaintiffs' motion to strike the government's defense based upon § 702c is affirmed. The matter is remanded to the District Court for trial on the merits.
 
 
 
 [1]
 For discussions as to whether cloud seeding could have contributed to the excessive precipitation and flooding, see St. Armand, Davis and Elliott, Report on Rapid City Flood of June 9, 1972, 5 J. Weather Modification 318-346 (1973); Reed, Cloud Seeding at Rapid City: A Dissenting View, 54 Bull. Amer. Meteor. Soc'y 676-677 (1973); Comments on Mr. Reed's "Dissenting View" on the Black Hills Flood, 54 Bull. Amer. Meteor. Soc'y 678-684 (1973); Another Round Over Rapid City, 55 Bull. Amer. Meteor. Soc'y 786-787 (1974); In Response to "Another Round Over Rapid City," 55 Bull. Amer. Meteor. Soc'y 787-790 (1974). For a general discussion of the legal aspects of weather modification, see Legal and Scientific Uncertainties of Weather Modification: Proceedings of a Symposium Convened at Duke University, March 11-12, 1976, by the National Conference of Lawyers and Scientists (W. Thomas ed. 1977)
 
 
 [2]
 Agnes Lunsford, as the administratrix of the estates of Theophil and Alice H. Gall, filed an administrative claim for $1,075,000. She sought $75,000 for property damage and $500,000 each for the deaths of Theophil and Alice H. Gall. Agnes Lunsford and Carol O'Brien, as the sole heirs of the estate of Norvel Gall, filed an administrative claim for $503,500. They sought $3,500 for property damage and $500,000 for the death of Norvell Gall. E. F. Lodmell, Jr., as the executor of the estate of E. F. and Anna R. Lodmell, filed an administrative claim for $1,065,000. He sought $65,000 for property damage and $500,000 each for the deaths of E. F. and Anna R. Lodmell
 
 
 [3]
 The complaint sought $250,000 each for the deaths and $75,000 each for the property losses of Theophil Gall, Alice H. Gall, Norvel Gall, E. F. Lodmell and Anna R. Lodmell. Leeann Emme sought $100,000 for the loss of real and personal property
 
 
 [4]
 The District Court dismissed the claim of Leeann Emme because she failed to file an administrative claim with the Bureau of Reclamation as required by the FTCA. The question of whether her claim was properly dismissed is not before the Court on this interlocutory appeal
 
 
 [5]
 The administrative exhaustion requirement of the FTCA is set forth in 28 U.S.C. § 2675(a) which provides:
 An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.
 
 
 [6]
 The regulations were promulgated pursuant to 28 U.S.C. § 2672. The regulations have been upheld as validly implementing the FTCA. Allen v. United States, 517 F.2d 1328 (6th Cir. 1975); Caton v. United States, 495 F.2d 635 (9th Cir. 1974); Ianni v. United States, 457 F.2d 804 (6th Cir. 1972); Pringle v. United States, 419 F.Supp. 289 (D.S.C.1976)
 
 
 [7]
 But cf. Larinoff v. United States, 175 U.S.App.D.C. 32, 533 F.2d 1167 (1976) (This case permitted a class action under the Tucker Act. Each of the seven individuals had filed administrative claims but no other mention was made of administrative exhaustion.); Quinault Allottee Ass'n & Ind. Allot. v. United States, 453 F.2d 1272, 197 Ct.Cl. 134 (1972) (This case was permitted to be brought as a class action against the United States in the Court of Claims with no mention of administrative exhaustion.); Northern Natural Gas Company v. Grounds, 292 F.Supp. 619 (D.Kan.1968), aff'd in part, rev'd in part on other grounds, 441 F.2d 704 (10th Cir. 1971), cert. denied, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971) (These consolidated cases were permitted to be brought as class actions under the Tucker Act and the FTCA with no mention of administrative exhaustion. We note, however, that the actions were all filed before the effective date of the 1966 amendments to the FTCA which required administrative exhaustion.)
 
 
 [8]
 In the case of a claim for property damage, it may be filed by "the owner of the property, his duly authorized agent or legal representative." 28 C.F.R. § 14.3(a). In the case of a claim based upon death, it may be filed by "the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law." 28 C.F.R. § 14.3(c)
 
 
 [9]
 It is necessary that a sum certain be stated so that the government is informed whether the claim is one that the individual agency has authority to settle, or whether it is in excess of $25,000 and, thus, requiring approval of the Attorney General prior to settlement under 28 U.S.C. § 2672. The statement of a sum certain is also necessary in connection with insurance coverage that may exist for the governmental action. See Caton v. United States, supra at 638; Bialowas v. United States, 443 F.2d 1047, 1050 (3rd Cir. 1971). We also note that a requirement for statement of a sum certain in the administrative claim can be implied from 28 U.S.C. § 2675(b) which specifically permits suits in excess of the amount of the administrative claim in certain limited circumstances. See Caton v. United States, supra at 638
 
 
 [10]
 In Executive Jet Aviation, Inc. v. United States, 507 F.2d 508 (6th Cir. 1974), the failure to name the insurers in the administrative claim did not bar the government's consideration of the claim. The case was limited to similar situations involving subrogation where the subrogor had filed a timely and complete administrative claim. Id. at 517. A similar result was reached in Sky Harbor Air Service, Inc. v. United States, 348 F.Supp. 594 (D.Neb.1972)
 In Ozark Air Lines, Inc. v. Delta Air Lines, Inc., 63 F.R.D. 69 (N.D.Ill.1974), the claim was timely filed by the lessee rather than the owner of the property. The court found that the lessee was "for all practical and equitable purposes" the owner and that the consequential damages claimed were those of the lessee. Id. at 72.
 Other cases cited by the plaintiffs where technical deficiencies have been waived have involved the rights of children. See, e. g., Stokes v. United States, 444 F.2d 69 (4th Cir. 1971); DeGroot v. United States, 384 F.Supp. 1178 (N.D. Iowa 1974); Young v. United States, 372 F.Supp. 736 (S.D.Ga.1974); Locke v. United States, 351 F.Supp. 185 (D. Hawaii 1972). However, when an adult's claim is improperly presented, strict compliance with technicalities has been required. Heaton v. United States, 383 F.Supp. 589 (S.D.N.Y.1974); Gunstream v. United States, 307 F.Supp. 366 (C.D.Cal.1969).
 
 
 [11]
 We note that even though the plaintiffs' motion to strike was not made within the time limits established by Fed.R.Civ.P. 12(f), the District Court did have authority to consider the plaintiffs' motion as it may strike material from the pleadings on its own initiative. See U.S. v. 416.81 Acres of Land, 514 F.2d 627, 630 n. 3 (7th Cir. 1975)
 
 
 [12]
 The Second Circuit has indicated a willingness to accept the rationale of Peterson v. United States, 367 F.2d 271 (9th Cir. 1966). See Parks v. United States, 370 F.2d 92, 93 (2d Cir. 1966)
 
 
 [13]
 The scope of § 702c has been narrowed on a different basis in another line of cases. In Guy F. Atkinson Co. v. Merritt, Chapman, & Scott Corp., 126 F.Supp. 406 (N.D.Cal.1954), § 702c was held to only protect the government from negligence when there was both government negligence and a natural disaster. When it is only government negligence, then there is no government immunity. Valley Cattle Company v. United States, 258 F.Supp. 12 (D. Hawaii 1966); Stover v. United States, 204 F.Supp. 477 (N.D.Cal.1962), aff'd, 332 F.2d 204 (9th Cir. 1964), cert. denied, 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964)
 Like the District Court, we reject this approach because
 (a)ny analysis based upon a determination of sole proximate cause must necessarily lead the court into the morass of "contributing causes," "superseding causes," and "intervening causes."
 Lunsford v. United States, 418 F.Supp. 1045, 1054 (D.S.D.1976).
 
 
 [14]
 In a later Ninth Circuit case, which held that § 702c barred a claim for negligent construction of a flood control project, the Court reemphasized the distinction it made in Peterson v. United States, supra. The Court stated that "(i)t does not follow that the mere happening of a flood insulates the Government from all damage claims flowing from it." McClaskey v. United States, 386 F.2d 807, 808 n. 1 (9th Cir. 1967)
 
 
 [15]
 It is possible that the government will be able to demonstrate that the damages caused by the Rapid City flood resulted from negligence related to a flood control project. At oral argument, the government stated that it was possible that the bursting of a dam contributed to the damages resulting from the Rapid City flood