729 F.Supp. 1250 (1990)
UNITED STATES of America, Plaintiff,
v.
MEXICO FEED AND SEED COMPANY, INC., et al., Defendants.
No. N 87-0030 C.
United States District Court, E.D. Missouri, N.D.
January 29, 1990.
*1251 Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., Robert Foster, Atty., Environmental Enforcement Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Gerhardt Braeckel, Asst. Regional Counsel, U.S. E.P.A., Region VII, Kansas City, Kan., Anna Thode, Atty., U.S. E.P.A., Washington, D.C., for plaintiff.
Bradford A. Brett, Brett & Erdel, Mexico, Mo., Hendren & Andrae, J. Kent Lowry, Jefferson City, Mo., for Jack Pierce, Pierce Waste Oil Service, Inc., Martin J. Pierce, Helen M. Pierce, and Mary Lynn Giacomini.
David A. Oliver, John L. Whiteside, Oliver Walker Carlton & Wilson, Columbia, Mo., for Mexico Feed and Seed Co.

MEMORANDUM
GUNN, District Judge.
This matter is currently before the Court on several motions. Those are:
1. Motion of the United States of America to amend its complaint;
2. Motion of the United States of America to strike defendants' jury trial demand;
3. Plaintiff's motion for partial summary judgment against defendants Pierce Waste Oil Service, Inc. ("PWOS") and Jack *1252 and Martin Pierce in their individual capacities;
4. Motion for partial summary judgment against defendants PWOS and Jack and Martin Pierce filed by defendants Mexico Feed and Seed Co., Inc. ("Mexico"), James F. Covington, individually and d/b/a Mexico Feed and Seed Co., Inc. and Mary J. Covington ("Covingtons");
5. Motion to strike affirmative defenses of Mexico Feed and Seed Co., Inc., James F. Covington, individually and d/b/a Mexico Feed and Seed Company, and Mary J. Covington's amended answer filed by defendants and crossclaimants Pierce Waste Oil Services, Inc., Jack L. Pierce, Martin J. Pierce, Helen M. Pierce, and Mary Lynn Giacomini; and
6. Plaintiff's motion for a ruling as to the appropriate scope and standard of review for the selection of response actions for the Mexico site. For the following reasons, the Court denies motions numbered 3, 4 and 5 above, grants in part and denies in part motion 1, and grants motions 2 and 6.
The United States of America brings this lawsuit pursuant to Sections 104 and 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), as amended, 42 U.S.C. §§ 9604 and 9607 against Mexico Feed and Seed Co., Inc., James F. Covington, individually and d/b/a Mexico Feed and Seed Company, and Mary J. Covington ("the Covington defendants"); and Pierce Waste Oil Service, Inc., Jack L. Pierce, Martin J. Pierce, Helen M. Pierce and Mary Lynn Giacomini ("the Pierce defendants"). The government seeks reimbursement of costs incurred in response to the release of hazardous substances, pollutants and contaminants from a facility known as the Mexico Feed and Seed site in Mexico, Missouri. Both the Covington defendants and the Pierce defendants filed their answers to the complaint; both sets of defendants filed crossclaims seeking contribution from each other.
The undisputed facts are as follows. The Mexico Feed and Seed site is located in Mexico, Missouri on property owned by James and Mary Covington. From approximately 1964 through approximately 1976, the Pierce defendants leased a 40' by 40' parcel of land from the Covingtons on which they placed several large tanks used for the storage of waste oil collected from various locations throughout Missouri. Some of the oil was subsequently shipped from the Mexico, Missouri facilities to the Pierce defendants' plant in Springfield, Illinois where the waste oil was recycled. In August 1976, the Pierce defendants ceased regular use of the tanks, but did not remove them from the site.
In 1983, the Audrain City-County Health Unit alerted the Environmental Protection Agency ("EPA") that the tanks were suspected of containing hazardous substances. EPA's subsequent investigation revealed high concentrations of toxic polychlorinated biphenyls (PCBs), including Aroclor 1242, in and around the Pierce defendants' waste oil tanks on the Mexico site. Both PCBs and aroclors are hazardous substances pursuant to regulations promulgated by the administrator of EPA in accordance with CERCLA provisions. 42 U.S.C. § 9601(14); 40 C.F.R. § 302.1, et seq., Table 302.4.
On July 25, 1984, pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), EPA issued an Administrative Order to the Pierce and Covington defendants requiring them to clean up the Mexico Site. The defendants did not perform the response action as directed by the Order.
Consequently, the United States conducted an emergency "removal" action to clean up the hazardous substances pursuant to 42 U.S.C. § 9604. In conducting this response action, EPA incurred costs and continues to incur interest and enforcement costs. This suit seeks reimbursement of those costs.
The disputed facts of the case concern the ownership of the tanks in question between the dates of 1976 and 1984, the time period during which the release of hazardous substances allegedly occurred. The Pierce defendants allege that in August 1976 they entered into an oral agreement with the Covington defendants whereby the Pierces would transfer ownership of the tanks to the Covingtons in return for up to three years free rental of the Covington *1253 property. The Covingtons deny that this agreement existed. In support of their position, the Covingtons allege that they not only continued to attempt to collect rent after the Pierce defendants ceased operations at the Mexico site, but also contacted or attempted to contact the Pierces regarding matters such as maintenance of the tanks. Moreover, the Covingtons argue that the agreement, even if it did exist, is unenforceable under both the Missouri statute of frauds, Mo.Rev.Stat. § 432.010 (1978), and the analogous provisions of the Uniform Commercial Code, Mo.Rev.Stat. § 400.2-201 (1978). The Pierce defendants contend that the fact that the Covington defendants did not have the tanks removed constitutes a kind of acceptance and indicates that the Pierces performed their part of the bargain. The Covingtons are therefore estopped from raising a statute of frauds defense, the Pierces argue. Further, the Pierces contend that the Uniform Commercial Code's statute of frauds does not apply because the predominant purpose or character of the agreement was not the sale of goods, but the payment of rent for the use of the land.
The Court will address each of the six motions in order below.

1. Motion of the United States of America to Amend its Complaint.

Plaintiff seeks leave to amend its complaint in the following respects:
a.) The withdrawal of plaintiff's claims for treble damages against each defendant;
b.) The withdrawal of all of its claims against Helen Pierce and Mary Lynn Giacomini;
c.) Clarification of paragraph 19 by inserting at the end of the paragraph "plus interest and enforcement costs;" and
d.) Joinder of Motor Oils Refining Technology Company ("MORECO") as a named defendant.
With respect to plaintiff's proposed amendments listed in paragraphs a, b, and c above, the Court grants leave so to amend the complaint. With respect to paragraphs a and b, defendants are not prejudiced; they are in fact benefitted. With respect to paragraph c, the government alleged in paragraph 19 of its original complaint that it had incurred response costs when it responded to the release or threat of release of hazardous substances. The government now seeks to amend that language (in what will be paragraph 25 in the amended complaint) to insert "plus interest and enforcement costs."
Section 107 of CERCLA provides that persons covered under that section shall be liable for:
(A) all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.
The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.
42 U.S.C. § 9607(a)(4)(A)-(D). Moreover, the statute defines "respond" or "response" to mean "remove, removal, remedy, and remedial action, all such terms (including the terms `removal' and `remedial action') include enforcement activities related *1254 thereto." 42 U.S.C. § 9601(25). Accordingly, the government's proposed amendment to include recovery of "interest and enforcement costs" is completely consistent with the statute, and the Court allows this amendment.
With respect to plaintiff's proposed amendment to add MORECO as a named defendant, the Court denies leave to amend as moot. Plaintiff has initiated a separate suit in this Court against MORECO styled United States v. Motor Oils Refining Technology Company, No. N89-132C. Plaintiff may want to consider consolidation of the two actions, but clearly an amendment to add MORECO as a defendant in this action is no longer necessary.

2. Plaintiff's Motion to Strike Defendants' Jury Trial Demand.

Courts considering this question in the context of an action for recovery of response costs brought under 42 U.S.C. § 9607 have found that response actions are equitable in nature and therefore no jury right attaches. See, e.g., United States v. Northeastern Pharmaceutical, 810 F.2d 726, 749 (8th Cir.1986) (listing cases). This Court agrees and, therefore, grants plaintiff's motion.

3. Plaintiff's Motion for Partial Summary Judgment against defendants Pierce Waste Oil Service, Inc. and defendants Jack and Martin Pierce in their Individual Capacities.

Plaintiff contends that it is entitled to partial summary judgment against defendants PWOS, Jack Pierce and Martin Pierce on the issue of liability. The Court finds that plaintiff has failed to show that the Pierce defendants' affirmative defense (that they did not own the tanks between 1976 and 1984 based on the alleged oral agreement to convey the tanks to the Covingtons) is insufficient as a matter of law. Moreover, the Court finds that even if plaintiff's argument were successful, it would prove only the inadequacy of the Pierce defendants' affirmative defense. Plaintiff still must prove its prima facie case of liability which includes, at least, proof of when the toxic substances were released from the Mexico Feed & Seed site. Such proof is not set forth in plaintiff's motion. Accordingly, the Court denies plaintiff's motion for partial summary judgment.
The Missouri statute of frauds, Mo.Rev. Stat. § 432.010, provides in pertinent part
No action shall be brought to charge any ... person ... upon any contract made for the sale of lands, ... or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith....
Mo.Rev.Stat. § 432.010 (1978). The alleged contract between the Covingtons and the Pierces purportedly provided for the transfer of the waste oil tanks to the Covingtons in exchange for up to three years rent. By its terms, the contract does not provide for a time period within which it is to be performed. Rather, it uses "up to three years rent" as a measure of consideration. Missouri courts consistently hold that where a contract could possibly be performed in less than a year consistent with its terms, it is not unenforceable under the statute of frauds. Crabb v. Mid-American Dairy-men, Inc., 735 S.W.2d 714, 716 (Mo.1987) (en banc); Prince v. Spire Corp., 584 S.W.2d 108, 112 (Mo.App.1979).
The Uniform Commercial Code's statute of frauds provides:
(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker....
Mo.Rev.Stat. § 400.2-201 (1978). The Court notes first that by its terms the contract at issue here is not even necessarily for an amount of $500 or more. The parties do not dispute that the Pierce defendants were paying the Covingtons $200 per year to rent the land upon which the tanks were situated, and the contract allegedly contemplated transfer in exchange for *1255 up to three years' rent. Only if the exchange was for three years' rent would the amount be equal to or above $500.
Furthermore, the cases have held that the determination of whether a contract is for the sale of goods depends upon "the predominant purpose or character of the agreement." United Industrial Syndicate, Inc. v. Western Auto Supply Co., 686 F.2d 1312, 1314 (8th Cir.1982). That determination, moreover, is peculiarly factual in nature, depending upon "the history and character of the business relationship" between the parties, "the principal object of the agreement," "the circumstances surrounding its execution" and "the subject matter of the contract." United Industrial Syndicate, 686 F.2d at 1314-15. Summary judgment is difficult under such a factual analysis, especially in a situation like the one currently before the Court where the opposing testimony of the parties makes up the bulk of the evidence presented.
Accordingly, because the Court finds that plaintiff has not proven as a matter of law the liability of the Pierce defendants, and because there exist in the record genuine issues of material fact, the Court denies plaintiff's motion for partial summary judgment.

4. Motion of Defendants Mexico Feed and Seed Co., Inc., James F. Covington Individually and d/b/a Mexico Feed and Seed Company and Mary J. Covington for Partial Summary Judgment on the issue of Liability against the Pierce Defendants.

This motion is based upon the same theory as is the third motion, discussed immediately above. The Court denies the motion for the same reasons set forth in subsection 3, therefore.

5. Motion of Defendants Pierce Waste Oil Services, Inc., Jack L. Pierce, Martin J. Pierce, Helen M. Pierce, and Mary Lynn Giacomini to Strike Affirmative Defenses of Mexico Feed and Seed Co., Inc., James F. Covington, individually and d/b/a Mexico Feed and Seed Company and Mary J. Covington.

This motion is the converse of the two motions for summary judgment above: the Pierce defendants seek to have stricken the Covington defendants' allegations that the alleged oral agreement is unenforceable under the Missouri statute of frauds or the Uniform Commercial Code's statute of frauds. The Pierce defendants offer three theories in support of their motion. First, they assert that they performed their part of the agreement by leaving the waste oil tanks on the Covingtons' property when Pierce Waste Oil Services was moved to Illinois. The Pierce defendants argue that, where one of the parties to an oral contract has fully performed its obligations under the contract, the other party is estopped from asserting the statute of frauds as a defense to allegations of breach. Secondly, the Pierce defendants allege that the statute of frauds does not apply to oral contracts capable of being performed within one year. Finally, they allege that the Uniform Commercial Code's statute of frauds does not apply because the predominant purpose of the oral agreement at issue here was not the sale of goods, but rather the lease of land.
Motions to strike affirmative defenses under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted. Lunsford v. United States, 570 F.2d 221, 229 (8th Cir.1977). The appropriate standard by which to measure the defense is whether "the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." Id.
The Court finds that the above standard is so similar to the summary judgment standard that, having denied the two summary judgment motions currently before it, the Court will for those same reasons deny this motion to strike.

6. Motion for a Ruling on the Appropriate Scope and Standard of Review for the Selection of Response Actions for the Mexico Site.

Applicable provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") provide as follows:

*1256 (j) Judicial review.
(1) Limitation
In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the Court.
(2) Standard
In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.
(3) Remedy
If the court finds that the selection of the response action was arbitrary and capricious or otherwise not in accordance with law, the court shall award (A) only the response costs or damages that are not inconsistent with the national contingency plan, and (B) such other relief as is consistent with the National Contingency Plan.
(4) Procedural Errors
In reviewing alleged procedural errors, the court may disallow costs or damages only if the errors were so serious and related to matters of such central relevance to the action that the action would have been significantly changed had such errors not been made.
42 U.S.C. § 9613(j). The Court will follow the statutory provisions as set forth above in this case. It is the Court's understanding that plaintiff seeks only response costs. Therefore, in determining whether the response action taken by the United States in this case was correct, the Court may look only to the administrative record and must determine whether the United States' action was "arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(2). The Court will adhere to the statutory framework set forth by Congress.
For all of the above reasons, in its order filed herein on this date, the Court grants in part and denies in part plaintiff's motion to amend; grants plaintiff's motion to strike jury trial; grants plaintiff's motion for ruling on the scope and standard of review insofar as that motion merely restates the statutory language expressed in 42 U.S.C. § 9613(j)(2); denies the motions for partial summary judgment filed by plaintiff and the Covington defendants and denies the motion to strike affirmative defenses filed by the Pierce defendants.

ORDER
In accordance with the Court's memorandum filed herein this date,
IT IS HEREBY ORDERED that the motion of the United States of America to amend its complaint be and it is granted with respect to amendments concerning the withdrawal of plaintiff's claims for treble damages against each defendant, the withdrawal of all of plaintiff's claims against Helen Pierce and Mary Lynn Giacomini, and the clarification of paragraph 19 (paragraph 25 in the amended complaint) by inserting at the end of the paragraph "plus interest and enforcement costs;" and that the motion be and it is denied with respect to plaintiff's proposed joinder as a party defendant of Motor Oils Refining Technology Company ("MORECO").
IT IS FURTHER ORDERED that the motion of the United States of America to strike defendants' jury trial demand be and it is granted.
IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment against defendants Pierce Waste Oil Service, Inc. ("PWOS") and Jack and Martin Pierce in their individual capacities be and it is denied.
IT IS FURTHER ORDERED that the motion for partial summary judgment against defendants PWOS and Jack and Martin Pierce filed by defendants Mexico Feed and Seed Co., Inc. ("Mexico"), James F. Covington, individually and d/b/a Mexico Feed and Seed Co., Inc. and Mary J. *1257 Covington ("Covingtons") be and it is denied.
IT IS FURTHER ORDERED that the motion to strike affirmative defenses of Mexico Feed and Seed Co., Inc., James F. Covington, individually and d/b/a Mexico Feed and Seed Company, and Mary J. Covington's amended answer filed by defendants and crossclaimants Pierce Waste Oil Services, Inc., Jack L. Pierce, Martin J. Pierce, Helen M. Pierce, and Mary Lynn Giacomini be and it is denied.
IT IS FURTHER ORDERED that plaintiff's motion for a ruling as to the appropriate scope and standard of review for the selection of response actions for the Mexico site be and it is granted insofar as the motion merely restates the standard and scope of review provided for in 42 U.S.C. § 9613(j).