Dewey BROWN, as the Personal Representative of the Estate of Charlie Brown, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 86–5705.

United States Court of Appeals, Eleventh Circuit.

March 1, 1988.

---

Leon B. Kellner, U.S. Atty., Michael Minkin, David O. Leiwant, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for U.S.

Mark J. Feldman, Miami, Fla., for Dewey Brown.

Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD *, Senior District Judge.

**PER CURIAM:**

In this wrongful death suit against the United States, the district court found liability and awarded damages in the amount of $49,328.50. On appeal, the United States argues that the district court lacked subject matter jurisdiction because the claimant failed properly to exhaust administrative remedies as required by 28 U.S.C. § 2675(a) (1982). Alternatively, the United States argues that it is entitled to a setoff equal to the amount received by the claimant in settlement of a state court suit involving different defendants but the same wrongful death. We find merit to the United States' alternative argument and accordingly reverse.

## I.

In March 1983, Charlie Brown filed a medical malpractice suit in the federal district court. The suit arose from his treatment at two medical facilities, Jackson Memorial Hospital and the Veterans Administration (VA) Hospital in Miami. The complaint named five defendants: the United States,[1] two physicians employed by Jackson Memorial, and two entities that owned and operated Jackson Memorial.[2] The complaint alleged that Brown had received treatment at Jackson Memorial between October 1981 and February 1982, and then at the VA Hospital between February 1982 and April 1982, and that doctors at both facilities had negligently failed to diagnose the tongue and throat cancer from which Brown was then suffering.

With respect to the claims against the United States, Brown asserted jurisdiction under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680 (1982). Brown had filed a claim with the VA eight months earlier and had therefore exhausted his administrative remedies as required

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The original complaint named the VA as defendant. On May 5, 1983, the parties stipulated to the substitution of the United States for the VA as the proper defendant.

2. The complaint alleged that the University of Miami and the Public Health Trust of Dade County, Florida owned, operated, and controlled Jackson Memorial Hospital.

by 28 U.S.C. § 2675(a) (1982).[3] With respect to the claims against the Jackson Memorial defendants, Brown asserted federal jurisdiction under the theory of pendent party jurisdiction.[4]

In March 1983, the district court dismissed those counts of the complaint that pertained to the four Jackson Memorial defendants. The court held that it did not have pendent party jurisdiction over those claims because the acts of negligence attributed to the Jackson Memorial defendants were separate and distinct from those attributed to the United States.[5] Brown then filed a medical malpractice suit in a Florida state court, naming as defendants the four parties dismissed from the federal suit.

Charlie Brown died before either the state court malpractice suit or the federal court malpractice suit reached trial. On February 1, 1984, Charlie Brown's attorney filed a wrongful death claim with the VA. One week later, the attorney moved the federal district court to substitute Dewey Brown, who had been appointed personal representative of Charlie Brown's estate, as party plaintiff in the suit originally commenced by Charlie Brown. At the same time, the attorney moved the court to amend the complaint so as to set forth an action for wrongful death under Fla.Stat. § 768.19 (1985).

The United States opposed both motions, contending that Dewey Brown had failed to satisfy the jurisdictional prerequisite set forth in 28 U.S.C. § 2675(a) (1982).[6] Section 2675(a) provides that as a prerequisite to maintaining a suit against the United States under the FTCA, a plaintiff must present notice of his claim to the appropriate federal agency, in this case the VA. Only after the claim has been denied or six months have passed may the plaintiff sue in federal court on the claim. *Id.* Conceding that the decedent had satisfied this requirement with respect to the original personal injury suit, the United States argued that the wrongful death action was a new action and as such required a separate administrative filing. Although the decedent's attorney had in fact made a new filing setting forth a wrongful death claim, the requisite six months had not yet passed.

The district court held that the wrongful death claimant could rely on the filing made in connection with the original personal injury suit. The court observed that "[w]hile the measure of any damages re-

**3.** Section 2675(a) provides in pertinent part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

**4.** The complaint did not allege any other basis for federal subject matter jurisdiction.

**5.** Under the theory of pendent party jurisdiction, "a court in some limited circumstances may bring in 'state' parties over which it could not otherwise exercise jurisdiction." *Williams v. Bennett,* 689 F.2d 1370, 1379 (11th Cir.1982). The availability of pendent party jurisdiction is

limited by both constitutional and statutory constraints. Article III requires that the federal and pendent party claims arise from a common nucleus of operative fact. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 371–72, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978). Furthermore, "[b]efore it can be concluded that [pendent party] jurisdiction exists, a federal court must satisfy itself ... that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976). This court has held that the FTCA contains "no express or implied negation of the federal courts' power to hear pendent party claims when that statute is invoked to confer jurisdiction." *Lykins v. Pointer,* 725 F.2d 645, 647 (11th Cir.1984). Thus, a district court has the power to assert pendent party jurisdiction over a state law claim where the principal claim is brought under the FTCA, provided that the constitutional test is satisfied, i.e., the pendent party claim and the principal claim arise from a common nucleus of operative fact. The district court in this case apparently concluded that the constitutional test was not satisfied.

**6.** *See supra* note 3.

covered in this case under the Wrongful Death Act will vary from those potentially recoverable under the original malpractice claims, the underlying 'claims' are identical, and administrative proceedings on them have long since been exhausted." Accordingly, the court granted the motions to amend the complaint and the case proceeded to trial in June 1985.

Meanwhile, upon Charlie Brown's death, the state court malpractice suit against the Jackson Memorial defendants had also been transformed into a wrongful death suit. As in the federal court suit, Dewey Brown had been substituted as plaintiff. Furthermore, as in the federal court suit, the wrongful death claims were brought under Fla.Stat. § 768.19 (1985). The parties to the state court suit entered into settlement negotiations, and, on July 8, 1985, Dewey Brown and Charlie Brown's surviving daughter signed a release with the defendants, settling the case for $237,-500. The settlement agreement provided that "[t]his Release ... expressly excludes any and all claims ... against the United States."

Upon conclusion of the trial in federal court, the court entered a final judgment in favor of Dewey Brown. In its findings of facts and conclusions of law, the court stated that "[r]egardless of any prior negligence that may or may not have been attributable to [the Jackson Memorial defendants], [Charlie] Brown's death was more likely than not caused by the V.A. Hospital's negligence." The court awarded Charlie Brown's estate $2,753 in medical expenses and $5,077 in funeral expenses. It also awarded $41,500 to be applied for the benefit of Charlie Brown's daughter, representing her damages for lost support, lost parental companionship and guidance, and the pain and suffering she experienced as a result of her father's death.

The United States then moved the district court pursuant to Fed.R.Civ.P. 59(a) to amend the final judgment to reflect a setoff in the amount of the settlement between Dewey Brown and the state court defendants. The United States argued that it was entitled to the setoff because the amount paid by the state court defendants had been in settlement of damages identical to those claimed in the federal court wrongful death suit. The district court rejected this argument and denied the motion, concluding that the injury the United States caused was separate from any injury that the state court defendants may have caused.

## II.

On appeal, the United States first argues that the district court lacked subject matter jurisdiction in this wrongful death action because Dewey Brown did not file a claim with the VA prior to bringing suit. The FTCA establishes that as a prerequisite to maintaining a suit against the United States, a plaintiff must present notice of the claim to the appropriate federal agency. The FTCA's filing requirement is satisfied if the claimant "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Adams v. United States*, 615 F.2d 284, 289 (5th Cir.1980). The congressional purposes of the administrative claim procedure are "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Id.* at 288 (quoting S.Rep. No. 1327, 89th Cong., 2d Sess. 6, *reprinted in* 1966 U.S.Code Cong. & Admin.News 2515, 2516). By requiring this notice, Congress sought to ensure that the agency is apprised of the circumstances underlying the claim, so that the agency may conduct an investigation and respond to the claimant by settlement or by defense. *Id.* at 289; *see Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir.1980).

The notice requirement does not require a claimant to enumerate each theory of liability in the claim. *Bush v. United States*, 703 F.2d 491, 494 (11th Cir.1983); *see Rise*, 630 F.2d at 1071; *Adams*, 615 F.2d at 289; *Speer v. United States*, 512 F.Supp. 670, 674 (N.D.Tex.1981), *aff'd*, 675 F.2d 100 (5th Cir.1982); *see also Tidd v. United States*, 786 F.2d 1565, 1567 (11th

Cir.1986) ("Although a claimant has an obligation to give notice of a claim under § 2675, he or she does not have an obligation to provide further information to assist *settlement* of the matter.") (emphasis in original). Compelling a claimant to advance all possible causes of action and legal theories is "overly technical" and may frustrate the purpose of the section 2675(a) notice requirement. *Mellor v. United States,* 484 F.Supp. 641, 642 (D.Utah 1978). A "claim" is not synonymous with a "legal cause of action." *Nelson v. United States,* 541 F.Supp. 816, 818 (M.D.N.C.1982); *Mellor,* 484 F.Supp. at 642. In this case, the claim filed by Charlie Brown provided the VA with the facts necessary to conduct a full investigation of the underlying circumstances. Requiring the appellee to exhaust the administrative claim procedure again would serve no useful purpose.[7] It is unlikely that the agency would conduct a second investigation or otherwise act any differently.[8]

The United States also maintains that until the new claimant files an administrative claim the district court lacks subject matter jurisdiction because a "new, independent cause of action arose when Charlie Brown died." The Florida Wrongful Death Act provides that a wrongful death action may be maintained on behalf of statutory beneficiaries if the decedent was entitled to bring an action based on the wrongful event. *See* Fla.Stat. §§ 768.19–.20 (1985). Although a Florida wrongful death action is clearly distinct from a personal injury

action, liability of a defendant in a wrongful death action is based on the negligent or wrongful act which injures the decedent. *See Martin v. United Sec. Servs. Inc.,* 314 So.2d 765, 770 (Fla.1975); *Gaboury v. Flagler Hosp., Inc.,* 316 So.2d 642, 644 (Fla. Dist.Ct.App.1975). "The death is not the operative fact upon which liability rests." *Nelson,* 541 F.Supp. at 818. A new administrative claim is unnecessary for a wrongful death action because while a different legal injury is suffered, both actions are based on the same injury in fact.[9] *But see Raymond v. United States,* 445 F.Supp. 740 (E.D.Mich.1978) (wrongful death claim is separate and distinct from personal injury claim under Michigan law). Although a new cause of action accrued at the time of Brown's death, the United States' liability is based on the same facts presented in Brown's administrative claim. We therefore hold that the district court properly exercised subject matter jurisdiction in this case.

### III.

■ The United States next argues that the district court erred in denying its request for a setoff in the amount of the settlement between Dewey Brown and the state court defendants. Since the district court made the damages award under the Florida Wrongful Death Act, Florida law governs whether and to what extent that award should be reduced by setoff. *See Scheib v. Florida Sanitarium Benevolent Ass'n,* 759 F.2d 859 (11th Cir.1985). Flor-

---

7. Indeed in this case a second claim was filed with the VA approximately one month after Charlie Brown's death, but it does not appear from the record that any substantial action was taken.

8. The government's ability to settle claims will not be hampered by permitting plaintiffs to forgo a second administrative claim in wrongful death actions. In Florida a wrongful death action depends on the same proof of negligence needed to maintain a personal injury action. *See* Fla.Stat. § 768.19 (1985). The death of a claimant therefore does not alter the government's analysis of the strengths and weaknesses of its case and accordingly its settlement evaluation. In addition, while the amount of damages available in a wrongful death action may depend on several factors, we have held that the

identification of additional qualified beneficiaries may not affect the amount claimed. *See Davis v. Marsh,* 807 F.2d 908, 912 (11th Cir. 1987).

9. We note that a claimant would have to meet the jurisdictional requirements if a different personal injury were suffered. *See, e.g., Rucker v. United States Dep't of Labor,* 798 F.2d 891, 893–94 (6th Cir.1986) (FTCA's jurisdictional requirement not satisfied for wife and children of a tort claimant where claimant's administrative claim fails to identify them as claimants); *Walker v. United States,* 471 F.Supp. 38, 42 (M.D.Fla. 1978) (husband's administrative claim did not satisfy the filing requirement for his wife's personal injury claim for loss of consortium), *aff'd,* 597 F.2d 770 (5th Cir.1979).

ida has adopted the Uniform Contribution Among Tortfeasors Act. *See* Fla.Stat. § 768.31 et seq. (1985). Section 768.31(5) provides that

> [w]hen a release or covenant to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for ... the same wrongful death, ... it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant.

This statute plainly requires that the United States be granted the setoff it requests. Both the United States and the state court defendants were sued for the same wrongful death. Both suits sought to recover those damages that the Florida legislature has authorized in Fla.Stat. § 768.21 (1985). The state court defendants settled out of court. Section 768.31(5) unequivocally requires that the claim against the United States be reduced by the amount of that settlement.

Appellee's argument that section 768.-31(5) does not require a setoff is based principally on the district court's finding that the injury attributable to the United States was separate from any injury that may be attributable to the state court defendants. This argument reflects a misunderstanding of the nature of the recovery authorized by the Florida Wrongful Death Act. Under that Act, an award may include two elements: (1) compensation for injuries suffered by the decedent's survivors as a result of the wrongful death (pain and suffering, lost support or services, and lost companionship); and (2) compensation for injuries suffered by the decedent's estate as a result of the wrongful death (medical and funeral expenses). *See* Fla. Stat. § 768.21 (1985). Thus, the injury for which the Wrongful Death Act authorizes recovery is not the personal injury that the decedent suffered, but rather the injury that his estate and survivors have suffered and will suffer as a result of the wrongful death. The relative responsibility of the various defendants for causing the death is a separate issue that bears no relation to this injury. It therefore makes no difference what the district court thought about the relative responsibility of the United States and the state court defendants for Charlie Brown's death. The fact of the matter is that Dewey Brown sought recovery for the same injury—the injury flowing from Charlie Brown's death—in two separate suits, one of which was settled out of court. Under Florida law, the claim against the nonsettling party must be reduced by the amount of the settlement.

Of course, a setoff would be improper if the federal court judgment and the state court settlement purported to compensate separate aspects of the injury flowing from the wrongful death. For example, a wrongful death award intended to compensate the injury sustained by the survivors cannot be offset by a settlement reflecting damages sustained by the estate. *See Devlin v. McMannis,* 231 So.2d 194 (Fla.1970). Such is not the case here, however. Both the state court complaint and the federal court complaint requested damages to the full extent authorized under the Wrongful Death Act. In light of the record before us, we must assume that the state court settlement and the federal court judgment each independently comprehended every item of recovery enumerated in Fla.Stat. § 768.21 (1985). Therefore, the United States is entitled to a setoff in the full amount of the state court settlement.

## IV.

Because the setoff to which the United States is entitled is a total setoff, on receipt of our mandate the district court shall enter judgment for the United States.

REVERSED.

TJOFLAT, Circuit Judge, specially concurring:

I agree with the majority's disposition of the setoff issue. Were I writing for the majority, however, I would not have reached that issue. I would have held that the district court lacked subject matter jurisdiction to entertain the wrongful death suit because appellee failed to comply with

the requirements of 28 U.S.C. § 2675(a) (1982).[1]

Compliance with section 2675(a)'s administrative filing requirement is a jurisdictional prerequisite to bringing suit in federal court under the Federal Tort Claims Act. *See Lykins v. Pointer, Inc.*, 725 F.2d 645, 646 (11th Cir.1984). In the present case, no one disputes that appellee failed to comply with that requirement prior to filing his wrongful death suit in the district court. Nevertheless, the majority concludes that he was excused from doing so because the decedent had made an administrative filing before his death in connection with his own personal injury claim. The majority reasons that the decedent's personal injury claim gave the VA sufficient notice of appellee's wrongful death claim, and that section 2675(a) requires no more.

To support this reasoning, the majority cites cases holding that an individual claimant may sue on a theory of recovery not set forth in his administrative claim, provided that the filing was otherwise proper and it "fairly apprise[d] the government of the facts leading to the [claimant's] injury." *Bush v. United States*, 703 F.2d 491, 494 (11th Cir.1983) (citation omitted). These cases, I submit, have little to do with the issue the court decides today. This case does not involve an individual claimant who has suffered a single injury and is seeking to pursue a particular theory of recovery that he neglected to include in his properly filed administrative claim. Rather, it involves a claimant who never filed an administrative claim in the first place and is seeking to rely on the filing of another claimant who suffered a wholly distinct injury. I submit that the majority's willingness to permit appellee to rely on another person's administrative filing is at odds with the congressional purposes behind section 2675(a).

One of the primary purposes of the procedure for administrative exhaustion established by section 2675(a) is to "mak[e] it possible for the government to expedite the fair settlement of tort claims asserted against the United States." S.Rep. No. 1327, 89th Cong., 2d Sess. 6, *reprinted in* 1966 U.S.Code Cong. & Admin.News 2515, 2516. *See also Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir.1983) ("The primary goal of the procedures established by the FTCA is to facilitate satisfactory administrative settlements."). Consistent with that purpose, courts have held that section 2675(a) "clearly presupposes the existence of an identifiable claimant or claimants with whom the government can negotiate a settlement." *Lunsford v. United States*, 570 F.2d 221, 225 (8th Cir.1977). Thus, for example, courts have held that a wrongful death claimant may not rely on an administrative filing in which he is not named as a claimant even though the filing involves the very wrongful death for which he seeks damages. *See Jackson v. United States*, 730 F.2d 808 (D.C.Cir.1984); *Estate of Santos v. United States*, 525 F.Supp. 982 (D.P.R.1981). Courts have also held that unnamed members of a plaintiff class ordinarily cannot rely on the administrative filing of the named members. *See Lunsford v. United States*, 570 F.2d 221 (8th Cir.1977); *Caidin v. United States*, 564 F.2d 284 (9th Cir.1977); *Commonwealth v. National Ass'n of Flood Ins.*, 520 F.2d 11 (3rd Cir.1975). Finally, several courts have held that a personal injury plaintiff cannot rely on the administrative filing of a third party even though the third party's filing arguably puts the government on notice of the plaintiff's injury. *See Rucker v. United States*, 798 F.2d 891 (6th Cir.1986); *Johnson v. United States*, 704 F.2d 1431 (9th Cir.1983); *Moody v. United States*, 585 F.Supp. 286 (E.D.Tenn.1984), *aff'd*, 774

---

**1.** Section 2675(a) provides in pertinent part:
An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the

appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

F.2d 150 (6th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 65, 93 L.Ed.2d 24 (1986); *Susanin v. United States,* 570 F.Supp. 25 (W.D.Pa.1983); *Fol v. United States,* 548 F.Supp. 1257 (S.D.N.Y.1982); *Ryan v. United States,* 457 F.Supp. 400 (W.D.Pa.1978); *Walker v. United States,* 471 F.Supp. 38 (M.D.Fla.1978), *aff'd,* 597 F.2d 770 (11th Cir.1979); *Stewart v. United States,* 458 F.Supp. 871 (S.D.Ohio 1978); *Green v. United States,* 385 F.Supp. 641 (S.D.Calif.1974).

The rationale underlying these cases is straightforward enough: the government simply cannot be expected to assess the settlement value of the claim of an unnamed claimant. The government has no way of knowing the amount of damages that will be sought or the theory under which those damages will be claimed. Thus, if plaintiffs seeking to sue in federal court were permitted to rely on administrative filings in which they were not named as claimants, a primary purpose of section 2675(a)'s exhaustion requirement—the facilitation of settlements—would be defeated.

These concerns are particularly strong where, as here, a wrongful death claimant seeks to rely on a personal injury filing made by the decedent before his death. The measure of damages available to a wrongful death claimant is substantially different from the measure of damages that would be available to the decedent had he survived.[2] A proper evaluation of the settlement value of a wrongful death claim requires information chat the government agency would not have had any reason to seek out when investigating the settlement value of the personal injury claim. For example, in evaluating loss of support, "the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered." Fla.Stat. § 768.21(1) (1985). Given the difference between the compensable injuries involved, I find it difficult to conclude that the VA would not, in cases such as this one, want to conduct a second investigation so that it could reassess its settlement position.[3]

By excusing the wrongful death claimant from following the procedures established by section 2675(a), the majority in effect denies the government the opportunity it is granted under the law to evaluate the settlement value of the claim. This result forces the government into one of two positions. Either it forces the government in many cases to forgo any attempt to settle, or it requires the government, each time it is presented with a personal injury claim, to evaluate the settlement value of any number of hypothetical wrongful death suits so that it can be ready with a settlement offer in the event a death does occur and a wrongful death suit is instituted. I do not believe that Congress, in enacting a jurisdictional exhaustion requirement intended to facilitate settlements, meant to impose such a burden on the government. Accordingly, I would hold that a wrongful death claimant must follow fully the exhaustion procedures established by section 2675(a).[4] Because appellee did not follow those procedures, I would hold that the

---

**2.** By statute, Florida law provides that the decedent's survivors may recover damages for lost support and services, lost companionship, and pain and suffering. Additionally, the decedent's estate may recover lost earnings of the deceased from the date of injury to the date of death, as well as medical and funeral expenses. Fla.Stat. § 768.21 (1985).

**3.** The majority contends that the decedent's administrative filing suffices because the wrongful death claim is based on the same injuries that gave rise to the personal injury claim. Of course the wrongful death claim is, in a sense, based on the same negligent act that injured the

decedent; otherwise, the death would not be "wrongful." The important point, and the point that the majority does not address, is that the *injury compensated* in a wrongful death suit is entirely different from the injury compensated in a personal injury suit.

**4.** Two district courts have reached the same conclusion. *See Shemansky v. United States,* No. 77–1152 (M.D.Pa. May 17, 1983); *Raymond v. United States,* 445 F.Supp. 740 (E.D.Mich. 1978). One district court has reached the contrary conclusion. *See Nelson v. United States,* 541 F.Supp. 816 (M.D.N.C.1982).