[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12372
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 10, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-01216-CV-B-S

MARLON B. SLATER,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 10, 2006)**

Before TJOFLAT, MARCUS  and FAY, Circuit Judges.

PER CURIAM:

Marlon Brando Slater appeals pro se the district court's grant of the government's motion to dismiss as time-barred his medical malpractice claims under the Federal Tort Claims Act, 28 U.S.C. § 1346.  For the reasons set forth more fully below, we affirm.

Slater, a former soldier in the United States Army, filed a pro se complaint against the United States under the FTCA alleging that, in October 1997, he was informed that his thyroid gland had been destroyed by the medication lithium carbonate, which had been prescribed and administered as treatment for Slater's bi-polar disorder by Veterans Administration (VA) doctors from 1988 to 1997.  As a result of the VA's alleged negligence, Slater stated that he suffered from bilateral carpal tunnel syndrome (CTS), hypothyroidism, and other disabilities.  On September 22, 1999, Slater submitted to the VA a claim requesting "service connection" on grounds that his CTS was caused by the continued administering of lithium carbonate, which was apparently granted by the Board of Veterans Appeals after the claim previously had been denied.[1]

In February 2004, Slater obtained a copy of his CTS claims form, and discovered that certain information had been deleted or changed, which he alleged was evidence of an attempt to obscure vital information in the claim as well as

---

[1] As discussed later in this opinion, the "service connection" claim was a claim for individual disability benefits, not an administrative tort claim.

2

fraud. While reviewing his medical records that same month, Slater discovered that his doctor, who had prescribed the medication zyprexa for him in March 2000, noted in the records that zyprexa can initiate the onset of diabetes mellitus. On April 30, 2000, Slater was admitted to a VA medical center for an onset of diabetes mellitus that landed him in a coma for two days.

On April 30, 2001, Slater submitted to the VA an administrative claim form seeking compensation for alleged acts of negligence and malpractice. Specifically, Slater alleged that his VA doctor had prescribed him the drug carbamazepine, and when Slater asked his doctor if carbamazepine could cause diabetes, the doctor informed him that it could.. The claim was denied. However, based on the notation in his medical record regarding zyprexa, Slater alleges that VA personnel and the medical expert employed to review his claim "had to discover" that his VA doctor "had noted that studies had revealed that zyprexa can elicit the onset of diabetes mellitus," and further alleged that zyprexa should not have been prescribed for him because of literature indicating that it should not be prescribed to patients with a predisposition to diabetes such as Slater, whose mother is a documented diabetic. As relief, Slater sought $200,000,000 in damages, as well as the liberty to seek medical care anywhere in the world, with all expenses, including travel, room, and board, to be paid by the United States.

The government responded by filing a motion to dismiss, or in the alternative, a motion for summary judgment, arguing that Slater's claim was barred by the administrative claim requirements of the FTCA found at 28 U.S.C. § 2401(b). Specifically, the government stated that, on April 30, 2001, Slater had filed a claim with the VA alleging that he had developed diabetes based on the negligent prescription of drugs by VA doctors in 2000. That claim was denied on November 7, 2001, and, therefore, Slater failed to file suit within six months of receiving the letter denying his claim as required. The government further argued that Slater previously had filed a complaint in federal district court, alleging malpractice by VA doctors between 1987 and 1997, which was dismissed as time-barred. The government noted that many of the allegations contained in the present complaint were identical to the allegations raised in the previously dismissed complaint.

Included with the motion to dismiss was the sworn declaration of Mary E. Barrett, Regional Counsel for the Department of Veterans Affairs covering Alabama, who stated that, on April 30, 2001, Slater filed a claim alleging that he had developed diabetes as the result of VA doctors negligently prescribing him drugs in 2000. The claim was denied in a letter dated November 7, 2001, and no other claims had been filed by Slater alleging that his diabetes was caused by the

4

negligent prescription of drugs in 2000. Also included was a June 11, 2001, claim alleging that VA doctors negligently failed to take him off of lithium carbonate between February 1988 and September 1997, causing hypothyroidism. This claim was denied as time-barred in a June 28, 2001, letter. On August 1, 2001, Slater filed a complaint in the Northern District of Alabama requesting that the court find that his claims were not time-barred, and the district court dismissed the complaint as time-barred on October 28, 2002.

On the basis of the foregoing evidence, the government argued that the district court should grant its motion to dismiss/motion for summary judgment because Slater had two years after his claim accrued to present his claim, or six months after his claim was initially denied, and because Slater was aware of his diabetes and its alleged connection to drug prescriptions in 2000, his present claim was untimely. Furthermore, it argued that the VA had denied his claim on November 7, 2001, and Slater failed to file suit within six months of that denial, making his lawsuit untimely.

In response, Slater filed objections to the government's motion for summary judgment. He contested the facts, and stated that he only became aware that zyprexa could cause diabetes in February 2004, and, therefore, the statute of limitations should not have started running until he discovered the notes of his

physician informing him of the possible effects of zyprexa. However, Slater also stated that his VA doctor, on May 23, 2000, had noted in Slater's medical records that zyprexa could initiate the onset of diabetes mellitus. As to his CTS, he requested that the statute of limitations begin running on June 3, 2003, the date that the Board of Veterans Appeals granted him "service connection" for bilateral CTS.

Slater also filed a reply, arguing that he first became aware of the drug carbamazepine as a doctoral student at the University of Auburn, when a graduate advisor asked him if he had ever been prescribed it. Slater, after researching the drug, discovered that it was prescribed for patients with medical disabilities similar to his own. In May 2000, when Slater was diagnosed with adult onset diabetes mellitus, he asked his VA physician if carbamazepine could have caused his diabetes, and his doctor confirmed that it could. Based on that information, Slater eventually filed a claim on April 30, 2001, which was later denied, and, upon further inquiry with the Food and Drugs Administration, Slater discovered that there was no evidence that carbamazepine could initiate the onset of diabetes mellitus. However, Slater did not see the notes regarding zyprexa and diabetes contained in his medical record until February 2004, and, therefore, argued that he did not possess the essential facts of his injury and its cause until that date. Slater subsequently requested and was denied an appointment of counsel.

Based on the parties' filings, the district court concluded that it lacked jurisdiction to entertain Slater's claims because the statute of limitations barred them. The court found that, despite Slater's assertion that he only learned of zyprexa and its ability to cause diabetes mellitus in February 2004, he was aware of his diabetes and its alleged connection to possible negligence of VA doctors in 2000, as evidenced by his filing of an administrative claim in April 2001. It further found that the fact that Slater now claimed a different drug caused his diabetes than originally claimed in 2000 did not save his case because Slater was aware all along of both the harm and its cause. Finally, it found that Slater had not alleged, nor could he, that, had he exercised "reasonable diligence" in 2001, he could not have learned of the alleged connection between zyprexa and his diabetes. Thus, Slater's complaint was dismissed with prejudice.

On appeal, Slater argues, <u>pro se</u>, that the district court failed to address two of his allegations, namely the allegation that negligence caused his CTS and the allegation that the VA had fraudulently changed information in an appeal in an effort to weaken his claim. Next, Slater argues that the district court erred by dismissing his claim regarding zyprexa and diabetes mellitus because, although he was aware of the drugs prescribed to him in 2000, VA doctors did not make him aware of the side effects, and, therefore, he did not become aware of the zyprexa

7

and its ability to cause diabetes mellitus until 2004 when he began preparing a different tort claim. He further argues that the VA committed fraud by actively concealing something from him in the November 7, 2001, letter denying his claim, although it is unclear exactly what Slater believes was concealed from him. Finally, Slater argues that the government failed to respond to his request for treatment outside of the VA medical centers. It is noted that Slater attached a number of exhibits with his appellate brief; however, we granted the government's motion to strike exhibits A through E and G and they will not be considered.

We review de novo the dismissal of an action for lack of subject matter jurisdiction, as well as the district court's interpretation and application of statutory provisions. Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2000). It is noted that pro se pleadings are to be afforded a liberal construction. Walker v. Dugger, 860 F.2d 1010, 1011 (11th Cir. 1988). However, we may affirm "on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." Rowell v. BellSouth Corp., 433 F.3d 794, 797-98 (11th Cir. 2005).

"It is well established that the FTCA is a specific waiver of the sovereign

immunity of the United States and must be strictly construed." Phillips v. United States, 260 F.3d 1316, 1318 (11th Cir. 2001). "By enacting the FTCA time limitation period, 28 U.S.C. [§] 2401(b), the United States has placed a condition on that waiver. [L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Id. Moreover, "[t]he Federal Tort Claims Act (FTCA) provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." McNeil v. United States, 508 U.S. 106, 107, 113 S.Ct. 1980, 1981, 124 L.Ed.2d 21 (1993).

> Pursuant to 28 U.S.C. § 2675(a) of the FTCA:
>
> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

Furthermore, the FTCA explicitly provides that a tort claim against the United States will be "forever barred" unless (1) presented to the appropriate

agency within two years after the claim accrues or (2) action is commenced within six months after the final denial of the claim by the agency to which it was presented. See 28 U.S.C. § 2401(b). "The general rule is that a claim under the FTCA accrues at the time of injury." Diaz v. United States, 165 F.3d 1337, 1339 (11th Cir. 1999). However, "[t]he rule for medical malpractice claims is that they accrue when the plaintiff knows of both the injury and its cause." Id. Thus, "a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant." Id.

Finally, the FTCA sets forth exceptions to the United States' waiver of sovereign immunity, and among those exceptions, a person cannot file suit under 28 U.S.C. § 1346(b) if that claim arises out of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); see also Boda v. United States, 698 F.2d 1174, 1176 (11th Cir. 1983) (holding that § 2680(h) is a jurisdictional bar to a plaintiff's FTCA claim that she was defrauded).

A.    Slater's Hypothyroidism

Slater's complaint references his hypothyroidism, which he believes was

10

caused by the negligence of VA doctors who continued treating him with lithium chloride, and, apparently, by failing to recognize through blood tests that his thyroid gland was being destroyed. It is somewhat unclear whether Slater is attempting to seek damages in this case for the hypothyroidism, or is referencing it only because the hypothyroidism, allegedly caused by VA doctors' negligence, is a partial cause of his CTS, which he more clearly is seeking to redress.

To the extent that Slater, given a liberal construction of his pro se pleading, is attempting to seek damages for the hypothyroidism itself, the record reveals that this claim previously was filed in a district court and dismissed as time-barred. Thus, to the extent that the dismissal was with prejudice and merit-based, Slater's claim is barred by res judicata. See Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003) (holding that "[t]he doctrine of res judicata, or claim preclusion, will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same.").

However, even if it were not, Slater, in his complaint, states that he learned that his thyroid gland had been destroyed in October 1997 by complications regarding the use of lithium carbonate. The record further reflects that, although

11

Slater filed for service-connected benefits in July 1998, he did not file an administrative tort claim until June 11, 2001, more than two years after he was aware that the claim had accrued.[2] Accordingly, any claim for hypothyroidism was time-barred, and the claim properly dismissed.

## B.    Carpal Tunnel Syndrome

In his complaint, Slater "alleges that the bilateral CTS is directly due to and is the result of his already service-connected hypothyroidism," and notes that a VA examiner noted in March 1999 that Slater was suffering from CTS, most likely because of "lithium side effects of hypothyroidism." However, the only administrative claim that Slater appears to have made was regarding service-related benefits, not an administrative tort claim, as required under the FTCA. As noted supra, note 2, a claim for service-related benefits is not a tort claim, and, in any

---

[2] We have no jurisdiction over any decision of law or fact necessary to the provision of benefits by the Secretary to veterans or the dependents or survivors of benefits. See 38 U.S.C. § 511(a); Anderson v. Veterans Administration, 559 F.2d 935, 936-37 (5th Cir. 1977) (holding that 38 U.S.C. § 211(a), repealed by Pub. L. 102-83, § 2(a), and renumbered § 511(a), prevented the Court from exercising jurisdiction over a veterans claim because it did not seek to challenge the constitutionality of the statutes underlying the benefits program). In fact, the exclusive avenue for redress of veterans' benefits determinations is an appeal to the Court of Veterans Appeals and from there to the United States Court of Appeals for the Federal Circuit. See Price v. United States, 228 F.3d 420, 421 (D.C. Cir. 2000).

Furthermore, a claim for service-related benefits is not a tort claim brought under the FTCA. Cf. Littlejohn v. United States, 321 F.3d 915, 920-21 (9th Cir. 2003) (noting that the VA disability process is ex parte and non-adversarial, that the VA is prevented from raising evidence to challenge the claimant, and that an adverse ruling in an FTCA case would not have any effect on the claimant's entitlement to benefits, and, therefore, holding that the district court was correct not to give preclusive effect to the VA's rating decision).

12

event, the BVA appears, according to Slater's complaint, to have found in his favor regarding his service-related disability.

Notwithstanding that the BVA's determination might be evidence in support of Slater's present tort claim, there does not appear, anywhere in the record, evidence that Slater filed an administrative tort claim with the VA claiming negligence that resulted in his CTS. Slater himself makes this clear when, in his reply brief, he asserts to the Court that the administrative tort claim that he filed on June 11, 2001, was not a claim for CTS, but for hypothyroidism, and that the mention of the VA's finding of a service connection for the CTS was not a request that the district court review a disability claim.

Slater argues that he was not granted service connection for CTS until June 3, 2003, and, therefore, the Federal Tort Claim submitted on June 15, 2004, was within the two-year statute of limitations. The first fatal flaw in Slater's argument is that his June 15, 2004, complaint was not an administrative tort claim with the VA, and, therefore, even if the complaint was filed within the two-year statute of limitations, the district court lacked subject matter jurisdiction because Slater failed to exhaust his administrative remedies.

The Supreme Court in McNeil held that the "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative

remedies," and because the plaintiff there "failed to heed that clear statutory command, the District Court properly dismissed his suit." McNeil, 508 U.S. at 113, 113 S.Ct. at 1984. The Court further noted that, the fact that the plaintiff in McNeil was pro se did not excuse mistakes in following procedural rules in ordinary civil litigation. Id., 113 S.Ct at 1984.

Here, like in McNeil, Slater "failed to heed that clear statutory command" requiring that his administrative remedies be exhausted before bringing suit. Moreover, while McNeil noted that pro se litigants are entitled to have their pleadings liberally construed, procedural rules such as exhausting administrative remedies before filing suit were specifically excluded from that rule. See McNeil, 508 U.S. at 113, 113 S.Ct. at 1984.

The second fatal flaw in Slater's argument is that he appears to assume that his disability benefit claim with the VA sufficed to put it on notice of his tort claim. "The FTCA establishes that as a prerequisite to maintaining a suit against the United States, a plaintiff must present notice of the claim to the appropriate federal agency." Brown v. United States, 838 F.2d 1157, 1159 (11th Cir. 1988). "The FTCA's filing requirement is satisfied if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." Id. at 1160. "By requiring this notice,

14

Congress sought to ensure that the agency is apprised of the circumstances underlying the claim, so that the agency may conduct an investigation and respond to the claimant by settlement or by defense." Id.

In the instant case, Slater did not file proper notice with the VA because, while his claim for service-related disability put the VA on notice of the disability, the VA disability process is ex parte and non-adversarial, and the VA is prevented from raising evidence to challenge the claimant, unlike in an FTCA claim. Littlejohn, 321 F.3d at 920-21. Thus, while the VA may have determined that Slater's CTS was service-related, and, therefore, he was entitled to disability benefits, the VA was not placed on notice that it needed to investigate any possible negligence on its part, as its role was to assist Slater in determining the facts pertinent to his claim, not to present defenses. Id. at 920; 38 C.F.R. § 3.103. Furthermore, while Slater claimed $200,000,000 in damages in his complaint, that amount was not presented to the VA with any CTS-related claim. Accordingly, Slater did not exhaust his remedies and the district court lacked jurisdiction to entertain the claim.

Lastly, Slater's complaint indicates that he became aware of his CTS and its possible relationship to lithium and hypothyroidism in March 1999. His tort claim was not filed until June 15, 2004, more than two years after Slater became aware of

his injury and the VA's potential connection to it. Accordingly, we conclude that his claim is time-barred and the district court lacked jurisdiction over Slater's CTS claim.

**C. Diabetes Mellitus**

Slater's complaint also sought redress for the onset of diabetes mellitus, which he alleged was caused by zyprexa, prescribed to him on March 31, 2000, and that the prescribing doctor had indicated that zyprexa can initiate the onset of diabetes mellitus. The record reveals that no administrative tort claim of negligence relating to zyprexa causing diabetes was ever filed, and that the only diabetes-related claim Slater filed was on April 30, 2001, alleging that the negligent prescription of carbamazepine caused him to develop diabetes mellitus. This claim was denied on November 7, 2001.

Slater now claims that a different drug caused his diabetes than the one alleged in his April 30, 2001, administrative claim. However, because Slater never filed an administrative tort claim with the VA alleging that zyprexa caused the onset of his diabetes, he failed to give the VA an opportunity to investigate his claim, and, therefore, failed to exhaust his remedies as required before filing suit under the FTCA. McNeil, 508 U.S. at 107, 113 S.Ct. at 1981; Brown, 838 F.2d at 1160.

16

The district court found that Slater had six months following the denial of his administrative claim to file his suit in district court, and the fact that he now claims a different drug caused the harm did not save Slater's case because Slater was aware that he had developed diabetes as a result of the actions of VA physicians. If, as Slater contends, he only recently discovered that zyprexa, and not carbamazepine, had been prescribed to him, application of the six-month time-bar may have been inappropriate.

However, assuming that Slater only just learned that the VA had prescribed him zyprexa and that zyprexa could initiate the onset of diabetes mellitus, Slater admitted that his own doctors had written in his medical records that, as of May 23, 2000, he was being prescribed zyprexa and zyprexa could initiate the onset of diabetes mellitus. "The rule for medical malpractice claims is that they accrue when the plaintiff knows of both the injury and its cause." Diaz, 165 F.3d at 1339. Thus, "a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant." Id. Slater claims he only had reason to become aware of the zyprexa and its potential effects in February 2004, when he "first noticed" his doctor's notes. However, Slater has failed to demonstrate that he could not have, through reasonable diligence, looked at his

17

own, personal medical records and seen this notation sooner.

Therefore, even if Slater's claim is not barred by the six-month limitation period, as was found by the district court, we conclude that it is clearly barred by the two-year statute of limitations, and, therefore, the district court correctly found that it lacked jurisdiction. Moreover, to the extent that the original administrative claim filed on April 30, 2001, did not apply to Slater's new claim, Slater failed to file a new administrative claim with the VA, and, therefore, failed to exhaust his administrative remedies.

### D. Misrepresentation

In his brief, Slater argues that the VA committed some sort of fraud, misrepresentation, or concealment by suppressing evidence to the BVA, or, in the alternative, by finding out about Slater's prescription for zyprexa and concealing that fact. Slater's complaint vaguely references an alteration on a form and a claim that VA doctors reviewing his April 30, 2001, claim "had to discover" that Slater was being prescribed zyprexa. The district court did not address these claims, and to the extent Slater meant to raise them and have them addressed, we conclude that they are meritless.

As noted above, the FTCA sets forth exceptions to the United States' waiver of sovereign immunity, and among those exceptions, a person cannot file suit

18

under 28 U.S.C. § 1346(b) if that claim arises out of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); see also Boda, 698 F.2d at 1176 (holding that § 2680(h) is a jurisdictional bar to a plaintiff's FTCA claim that she was defrauded). This exception was held by the Supreme Court to cover negligent, as well as deliberate, misrepresentation. See United States v. Neustadt, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961). Thus, the district court lacked jurisdiction over any of Slater's claims of deceit or misrepresentation.

Based on the foregoing, the district court correctly stated that it lacked jurisdiction to entertain Slater's FTCA claim. Even given the most liberal construction of Slater's complaint, we conclude that his allegations of negligence failed to comply with the FTCA's administrative filing requirements, or, as in the case of his fraud/misrepresentation allegation, were specifically excluded as a cause of action against the United States. Therefore, while the district court may not have addressed all of Slater's claims because they were not clearly articulated, and while it may have inappropriately applied the six-month limitation to bar Slater's diabetes mellitus claim-zyprexa claim, its ultimate conclusion that it lacked jurisdiction over the claim was correct. We, therefore, affirm.

19

**AFFIRMED.**